UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL DREALL CASTON,

    Petitioner,

             Case No. 2:17-cv-12740
 v.           Honorable George Caram Steeh

MELINDA K. BRAMAN,

    Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

This matter has come before the Court on petitioner Samuel Dreall Caston's petition for the writ of habeas corpus under 28 U.S.C. § 2254. The *pro se* petition challenges petitioner's convictions for felonious assault, Mich. Comp. Laws §750.82, possession of marijuana, second offense, Mich. Comp. Laws, § 333.7403(2)(d); Mich. Comp. Laws § 333.7413(2), and domestic violence, Mich. Comp. Laws § 750.812. The convictions arose from an altercation between petitioner and his former girlfriend, LaShawna Hubbard, in 2014. Petitioner's sole ground for habeas relief is that the trial court erred when it ruled that Hubbard was unavailable at trial

and that the prosecutor could admit in evidence Hubbard's testimony from petitioner's preliminary examination.

The State asserts in an answer to the petition that petitioner's claim is procedurally defaulted and that most of his claim is not cognizable on habeas review. The State also contends that the state appellate court's decision was reasonable and not contrary to Supreme Court precedent.

The Court agrees that petitioner's claim does not warrant habeas corpus relief. Accordingly, the petition will be denied.

## I. Background

Petitioner waived his right to a jury and was tried before a circuit court judge in Oakland County, Michigan on March 23, 2015. The Michigan Court of Appeals summarized the trial proceedings and facts as follows:

> This appeal arises from an incident which occurred between defendant and his then girlfriend, LaShawna Hubbard, at an apartment complex in Oak Park, Michigan. At 9:00 p.m. that evening, a resident of the apartment complex heard an altercation between a man and a woman outside of her apartment, prompting the resident to telephone the police. When Oak Park Public Safety officer Anthony Carignan first arrived at the apartment complex he heard Hubbard screaming, "[h]e just assaulted me." Hubbard was seen running from a silver Mercedes, and as the vehicle attempted to drive out of the parking lot of the apartment building, Officer Carignan positioned his police vehicle at a slant so the Mercedes could not leave the parking lot. When ordered by Officer Carignan to keep his hands on the steering wheel of the Mercedes, defendant screamed out,

"[m]y hands are right here mother f* * * * * * n* * * *."[1] Describing defendant as "belligerent and argumentative and yelling [,]" Officer Carignan also noted that Hubbard was "very upset and distraught and screaming." When Oak Park Public Safety officer Donald Hoffman arrived at the apartment complex, Hubbard told him that she and defendant had had an altercation, and according to Officer Hoffman, Hubbard gave the following recitation of the relevant events:

> She told me that [defendant] came over to [his] sister's house—his sister's house to pick her up. [Defendant] was carrying a baseball bat with him, a miniature baseball bat and she didn't want to go with him. Instead of getting assaulted she decided that she would just go with [defendant] and she told me that she got in the car, they drove around to one of the side parking lots, he hit her with an open-hand, so slapped her in the face, and then after that she told me that she—he specifically told her he was going in to the parking lot to fight her. So, they pulled into a parking lot nearby where he struck her again with a closed fist this time and then he open-hand— slapped her again actually, there was a couple times where he hit her and then he got out of the car, exited the car with the baseball in—bat in hand, and when he went up to swing at her she said that she lifted her right leg up like to kind of block the strike of the baseball bat and he hit her twice with the baseball bat in her right leg. Then [defendant]—I guess he saw the police lights and sirens and threw the baseball bat. She exited the car and he got in the car and took off and that's when she ran into the field and that's when I arrived.

Officers retrieved Hubbard's cellphone that defendant had taken from her as well as the baseball bat defendant allegedly wielded

---

[1] A DVD from Officer Carignan's patrol car was admitted into evidence and played during trial.

during the assault. Photographs of Hubbard and more specifically, her knee, were admitted into evidence at trial with testimony from Officer Hoffman noting that Hubbard incurred "slight bruising" to her knee but that he did not see any "obvious injuries[ ]" to her face. Officer Hoffman also recalled that Hubbard told him that she was scared for her life and that she had not wanted to go anywhere with defendant.

When Officer Carignan performed a consent search of defendant's vehicle following defendant's arrest, the search yielded two bags of suspected marijuana which subsequent testing confirmed to be marijuana. Defendant told Officer Carignan that he and Hubbard had argued, but defendant denied assaulting Hubbard. In a later statement to police, defendant reiterated that he did not assault Hubbard, denied possessing the baseball bat, but he did admit to possessing marijuana. At the close of the prosecution's case, the prosecutor requested that the trial court admit Hubbard's preliminary examination testimony pursuant to MRE 804(b)(1) and MRE 804(b)(6) as Hubbard was an unavailable witness as contemplated by MRE 804(a)(5). Following defense counsel's responding arguments, the trial court ultimately determined that Hubbard's preliminary examination testimony would be admitted into evidence.

Following the close of proofs, the trial court issued a ruling from the bench holding, in pertinent part:

> The Court has—recognizes and finds beyond a reasonable doubt that the victim and the defendant had a dating relationship or a romantic relationship. And, the Court finds from the testimony of the victim that there was a fight going on between the two of them over a phone, over suspected cheating, and that the defendant did put the victim in fear. She felt threatened. Whether he actually pulled her into the car or she walked on her own, it was clear that the defendant's sister did not want them to remain. And, it was clear from the victim's testimony that she didn't want to have a scene out front of the defendant's

> sister's home, so she did get into the car. And, then the Court did find based on the testimony of the victim and the officers that the defendant did pull over into a different spot, got out of the car, and with a bat intentionally struck the victim two times in the legs. And, yes the injury wasn't terribly serious but it could have been if the police had not been called.
>
> * * *
>
> The Court also finds very—it weighs heavily on the Court that the victim, the testimony was, that she was slightly over five feet. The Court takes judicial notice that the defendant is larger than five feet. So, she was in a vulnerable position to feel threatened by the size of the defendant and knowing that he had a bat....

People v. Caston, No. 327623, 2016 WL 6992179, at *1-*2 (Mich. Ct. App. Nov. 29, 2016) (alterations and footnote in original).

Petitioner did not testify or present any witnesses. His defense was that he argued with Hubbard, but did not hit her. He also maintained that the trial court lacked jurisdiction over him and that he was not guilty of anything.

The trial court found petitioner guilty, as charged, of felonious assault, possession of marijuana, and domestic violence. On April 29, 2015, the trial court sentenced petitioner as a fourth habitual offender to concurrent terms of two to fifteen years in prison for the felonious assault, 163 days in jail for possession of marijuana, second offense, and 93 days in jail for

domestic violence, with jail credit of 163 days for each of the three offenses.[2]

Petitioner raised his current claim in the Michigan Court of Appeals in an appeal as of right. The Court of Appeals affirmed his convictions and sentences, see Caston, 2016 WL 6992179, and on May 31, 2017, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issue. See People v. Caston, 500 Mich. 1002; 895 N.W.2d 520 (2017). On August 16, 2017, petitioner filed his habeas corpus petition.

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." Harrington v. Richter, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[2]Petitioner was discharged from prison on September 27, 2018. See http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=234408.

>     established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (*per curiam*)." Renico v. Lett, 559 U.S. 766, 773 (2010). In fact, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." Richter, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fair-minded disagreement." Id. at 103.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." Baze v. Parker, 371 F.3d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

### III. Analysis

As noted above, petitioner claims that the trial court erred when it (1) determined that Hubbard was unavailable to testify at trial and (2) ruled that the prosecutor could admit in evidence Hubbard's testimony from petitioner's preliminary examination. Petitioner contends that the trial court abused its discretion when it determined that the police made a good-faith effort to produce Hubbard for trial. Petitioner also contends that the admission of Hubbard's prior testimony violated his State and Federal constitutional right to confront the witnesses against him.

The Michigan Court of Appeals reviewed petitioner's claim for plain error because petitioner did not preserve the claim for appellate review by making the same argument in the trial court. The Court of Appeals also

determined that petitioner forfeited his claim regarding the right of confrontation by making threatening and manipulative telephone calls to Hubbard, thereby rendering Hubbard unavailable to testify at trial. Caston, 2016 WL 6992179, at *3 and *7.

## A. Procedural Default

The State argues that petitioner procedurally defaulted his claim. A procedural default is "a critical failure to comply with state procedural law." Trest v. Cain, 522 U.S. 87, 89 (1997). Under the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012). In this Circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." [Jalowiec v. Bradshaw, 657 F.3d 293, 302 (6th Cir. 2011)]. To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim." Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

Henderson v. Palmer, 730 F.3d 554, 560 (6th Cir. 2013).

The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants in criminal cases to preserve their appellate claims by objecting on the same ground in the trial court. People v. Buie, 298 Mich. App. 50, 70-71; 825 N.W.2d 361, 374 (2012). Petitioner violated the contemporaneous-objection rule by failing to raise his current argument in the state trial court. Although defense counsel asked the trial court not to admit the transcript of petitioner's preliminary examination, *see* 3/23/15 Trial Tr. at 156, he did not dispute that Hubbard was unavailable, and he did not argue that admitting the transcript would violate petitioner's right of confrontation. Therefore, factor one is satisfied.

Factor two also is satisfied because the Michigan Court of Appeals enforced the contemporaneous-objection rule. The Court of Appeals stated that petitioner did not properly preserve his claim by: (1) challenging the admission of Hubbard's preliminary examination testimony on the ground that the prosecution had not shown due diligence; and (2) asserting that he was being denied his constitutional right to confront the witnesses against him. Caston, 2016 WL 6992179, at *3.

The third procedural-default factor is satisfied if the state procedural rule in question was an adequate and independent state ground for

denying review of a federal constitutional claim. "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review." Biros v. Bagley, 422 F.3d 379, 387 (6th Cir. 2005) (citing Abela v. Martin, 380 F.3d 915, 921 (6th Cir. 2004)).

"Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule," Taylor v. McKee, 649 F.3d 446, 451 (6th Cir. 2011), and the Michigan Court of Appeals relied on the rule to preclude full review of petitioner's claim. Therefore, the third procedural-default factor is satisfied.

The fourth factor requires a habeas petitioner to show "cause" for his state procedural error and resulting prejudice. Petitioner has not alleged that "cause and prejudice" excuse his procedural default. The Court, therefore, deems the "cause and prejudice" argument abandoned. Roberts v. Carter, 337 F.3d 609, 613 (6th Cir. 2003) (citing United States v. Cofield, 233 F.3d 405, 407 (6th Cir. 2000)).

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim if he can demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). "A fundamental

miscarriage of justice results from the conviction of one who is 'actually innocent.' " Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir. 2006) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995).

Petitioner contends in a reply to the State's answer to the habeas petition that the prosecution failed to disclose Hubbard's outstanding warrant on a charge of felonious assault. *See* Petitioner's reply brief, ECF No. 11. Petitioner maintains that this was a miscarriage of justice because evidence of the warrant for Hubbard's arrest could have resulted in a different disposition of his case.

Petitioner has not submitted any proof that Hubbard had an outstanding warrant for her arrest. Even if there was an actual warrant for her arrest, the warrant obviously is not new evidence, because petitioner alleges that the warrant was the reason Hubbard did not appear at his trial.

The warrant also does not establish petitioner's innocence on the assault and domestic violence charges, as there was no evidence justifying

his violent conduct toward Hubbard. Although Hubbard testified at the preliminary examination that she had a can of mace in her pocket during the incident with petitioner, she claimed that she did not use it or even take the mace out of her pocket. She merely threatened to use the mace if petitioner tried to hit her with the bat. (12/3/14 Prelim. Examination Tr. at 26-31.)

Petitioner has not supported his constitutional claim with new and reliable evidence of actual innocence. Therefore, he has failed to show that a miscarriage of justice would occur if the Court failed to address the merits of his claim. His claim is procedurally defaulted because all four factors of a procedurally-defaulted claim are satisfied.

### B. On the Merits

Petitioner's claim also lacks substantive merit. The alleged violations of state law are not a basis for granting the writ of habeas corpus because "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). The only cognizable question here is whether the admission of

Hubbard's prior testimony at petitioner's trial violated petitioner's right of confrontation under the Federal Constitution.

### 1. Clearly Established Federal Law

The Sixth Amendment to the United States Constitution guarantees defendants in criminal cases the right to be confronted with the witnesses against them. U.S. CONST. amend. VI. This right is "applicable to the States through the Fourteenth Amendment," Idaho v. Wright, 497 U.S. 805, 813 (1990), and it "includes the right to cross-examine witnesses." Richardson v. Marsh, 481 U.S. 200, 206 (1987). But testimonial statements of individuals who are absent from trial generally are admissible if the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 68 (2004). The term "testimonial" applies to prior testimony at a preliminary hearing. Id.

### 2. Application

At the beginning of petitioner's trial, the prosecutor stated that Hubbard had been served with a subpoena to appear in court, but that she was not there yet. The prosecutor then stated that she would attempt to introduce Hubbard's testimony from the preliminary examination if Hubbard did not appear at trial. The trial court responded to the prosecutor's

comments by asking Detective Devon Benson to call Hubbard and tell her to come to court immediately. (3/23/15 Trial Tr. at 13-15.)

After the parties made their opening statements, Detective Benson informed the trial court that he had been unable to reach Hubbard or leave a message for her because her voice mail was full. The trial court chose to proceed with other witnesses in the hope that Hubbard would still appear. *Id.* at 26-27.

Detective Benson subsequently testified about his efforts to obtain Hubbard's presence at trial. He explained that he had informed Hubbard of the trial date by phone and that he subsequently served her with a subpoena on March 13, 2015, which was ten days before trial. Benson also informed Hubbard that he would arrange transportation for her if she needed a ride. The two of them agreed to meet with the prosecutor on March 19, 2015, but Hubbard canceled the meeting that morning. Detective Benson tried to call Hubbard several times after March 19, but the calls would go straight to her voice mail, and he was not able to leave a message because the voice mail was full. *Id.* at 134-36.

Continuing, Detective Benson testified that, on the day of trial, two detectives went to Hubbard's place of employment and were told that Hubbard no longer worked there. The detectives also were unable to find

Hubbard at her mother's home or at the home of petitioner's sister, where Hubbard was staying on the date of the incident with petitioner. *Id.* at 137-38.

On cross-examination, Detective Benson admitted that he had not looked for Hubbard's mailing address or any Secretary of State records and that he did not talk with Hubbard's mother in the previous few days. *Id.* at 149. However, he claimed that Hubbard had never refused to testify and that there was nothing else he could do to try to locate her. *Id.* at 149-50.

Public safety officer Anthony Carignan also attempted without success to locate Hubbard before trial, *id.* at 62-63, and the prosecutor added that she spoke with Hubbard on March 19, 2015, which was the date set for their meeting with Detective Benson. Hubbard offered to re-schedule their meeting, but also informed the prosecutor that she did not want to appear in court and testify. She did not return the prosecutor's subsequent calls. *Id.* at 152-53.

The trial court determined that the prosecution had shown due diligence in trying to obtain Hubbard's presence and that Hubbard was unavailable. The trial court also ruled that the prosecutor could admit in evidence Hubbard's testimony from petitioner's preliminary examination. *Id.* at 157-58.

The Michigan Court of Appeals affirmed the trial court's ruling, stating that the trial court had properly concluded that the prosecution and police acted with due diligence in securing Hubbard's attendance at trial. The Court of Appeals also stated that Hubbard's testimony at the preliminary examination was correctly admitted in evidence under the Michigan Rules of Evidence.

Petitioner contends that the trial court erred in finding that Hubbard was unavailable. However, a witness is unavailable for purposes of the Confrontation Clause if "the prosecutorial authorities made a good-faith effort to obtain [the witness's] presence at trial," Barber v. Page, 390 U.S. 719, 724–25 (1968), and the record in this case demonstrates that the prosecutor and police made a good-faith attempt to obtain Hubbard's presence at trial. When, as here,

> a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence, but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising. And, more to the point, the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken. Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed.

Hardy v. Cross, 565 U.S. 65, 71-72 (2011) (internal citation omitted).

The state courts' conclusions – that the prosecution and police had shown due diligence and that Hubbard was unavailable – were reasonable because an officer personally served Hubbard with a subpoena and other officers attempted to contact and find Hubbard. Further, Hubbard's evasive conduct, as well as her comment to the prosecutor about not wanting to appear in court, indicate that she did not intend to testify against petitioner. The Court, therefore, defers to the state appellate court's reasonable decision regarding Hubbard's unavailability and concludes that the unavailability prong of the Crawford test is satisfied.

The "prior opportunity" prong also is satisfied, because petitioner had a full opportunity to confront Hubbard at his preliminary examination. This is not a case in which the opportunity to cross-examine the complaining witness was somehow deficient. Petitioner's former attorney thoroughly cross-examined and re-cross-examined Hubbard at the preliminary examination. *See* 12/3/14 Prelim. Examination Tr. at 36-51, 54-55.

The Court concludes that petitioner's right of confrontation was not violated by the state courts' determination that Hubbard was unavailable and that her prior testimony was admissible in evidence. Petitioner, therefore, is not entitled to relief on his constitutional claim.

## IV. Conclusion

Petitioner's sole ground for relief is procedurally defaulted and meritless. Further, the state appellate court's decision was not so lacking in justification that there was an error beyond any possibility of fair-minded disagreement. The Court, therefore, denies the petition for a writ of habeas corpus with prejudice.

The Court also declines to issue a certificate of appealability because petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Reasonable jurists, moreover, could not disagree with the Court's resolution of petitioner's claim, nor conclude that the claim deserves encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

The Court, nevertheless, will allow petitioner to appeal this decision *in forma pauperis* because petitioner was allowed to proceed *in forma pauperis* in this Court, *see*, ECF No. 6, and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

Dated: May 2, 2019

                                         s/George Caram Steeh
                                         GEORGE CARAM STEEH
                                         UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 2, 2019, by electronic and/or ordinary mail and also on Samuel D. Caston, 12105 Elmdale, Detroit, MI 48213.

s/Barbara Radke
Deputy Clerk